CHARLES E. THOMSON, as Executor of WILLIAM S. THOMSON, Deceased, Appellant, *v.* GEORGE C. BATCHELLER et al., Respondents, Impleaded with Another.

**Contract to sell goods upon royalty — relation of parties.**

The terms of a contract to sell goods upon royalty examined, and *held,* that the relation existing between the parties was contractual only, and not that of copartners, trustees or of a fiduciary character.

*Thomson* v. *Batcheller,* 134 App. Div. 506, affirmed.
(Argued February 14, 1911; decided February 28, 1911.)

APPEAL from a judgment entered January 8, 1910, upon an order of the Appellate Division of the Supreme Court in the first judicial department, which reversed on the facts and the law an interlocutory judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term and directed a dismissal of the complaint upon the merits.

This action was brought for an accounting and to recover damages under the provisions of a contract, which is as follows:

"Agreement made this thirtieth day of December, in the year 1899, between William S. Thomson, a resident of London, England, party of the first part, and George C. Batcheller, Harry D. Miller and Edward W. Russell, of the firm of Langdon, Batcheller and Company, of the City of New York, parties of the second part:

"WHEREAS, the party of the first part has been for a number of years and is now carrying on business of the manufacture and sale of perfumery in said London and in the City of New York, under the business name of the Crown Perfumery Company;

"And WHEREAS, the said parties of the second part have agreed to purchase from the party of the first part so much of said business as has been and is carried on in the United States:

"*Now, therefore,* this agreement witnesseth: That in consideration of the premises, the said party of the first part has and does hereby sell, assign, transfer and set over to the said parties of the second part, all the business heretofore

carried on by him under the said name of The Crown Perfumery Company in the United States of America, and all the property, not including accounts receivable used in or belonging to said business, including stock on hand, show cards, labels, formulas, recipes for making perfumes, and other property used by him therein, and so long as the parties of the second part shall abide by and perform the terms of this agreement, the said party of the first part has and does hereby grant to the parties of the second part the exclusive license in the United States of America to use and employ in said business and to apply to the goods manufactured or sold by them therein, all the trade-marks, trade-names and labels heretofore used by the said party of the first part in his said business, and especially the trade-marks or trade-names ' Crown Perfumery Company of London and Paris,' ' Crown Lavender Salts,' ' Crab Apple Blossoms,' 'Ambroline,' ' Crown Violet,' ' Bouquet Versailles,' ' Marie Antoinette,' ' Gem of the Antilles,' ' Eldorado,' and the word ' Crown ' as applied to any and all other odors or perfumes.

" In consideration whereof, the said parties of the second part hereby agree to pay to the said party of the first part, his executors, administrators, or assigns, a royalty which shall be equal to twenty-five per cent. of all the net profits of the said business so to be carried on by them, said amount to be paid semi-annually on the first days of February and August in each year; provided, however, that if at any time the said parties of the second part should retire from business, or in case the gross sales of said business as carried on by them does not reach the sum of Sixty thousand ($60,000) Dollars in any one year, then and in that case the said party of the first part, his executors, administrators or assigns, shall have the right to terminate this contract and to resume the exclusive use in the said territory of the said trade-marks, trade-names and labels, and from thenceforth all rights granted to the said parties of the second part under this contract shall cease and determine.

" And the said party of the first part further agrees to put the parties of the second part in direct communication with his sources of supply in Europe and America, and to execute

all orders of the said parties of the second part for labels, cartons, perfumes, or any other articles used, employed or sold in said business ordered from the London house of the said party of the first part, and to invoice or cause to be invoiced all of the above stated articles to the parties of the second part at actual cost. For and upon the goods and articles so purchased the parties of the second part agree to pay to the party of the first part, at the times aforesaid, the sum of ten per cent. upon the invoiced price of all goods purchased through him or The Crown Perfumery Company of London.

" And the said parties of the second part, in consideration of the premises, agree to pay in eight quarterly payments, without interest, to the said party of the first part the actual cost price of the existing stock of the said party of the first part in the city of New York, or elsewhere in the United States, reserving, however, the right to reject any labels now in stock not in actual use by the party of the first part in his business. The party of the first part, in person or by his agents, to have access at all reasonable times during business hours to the books of account of the parties of the second part which may contain entries relating to the said business.

" This agreement to enure to the benefit of and be binding upon the successors and assigns of the parties of the second part in their said business.

" *In Witness Whereof*, the parties hereto have hereunto set their hands and seals the day and year first above written.

　　　(Signed)　　　" WILLIAM S. THOMSON,
　　　　　　　　　　" GEORGE C. BATCHELLER,
　　　　　　　　　　" H. D. MILLER,
　　　　　　　　　　" EDWARD W. RUSSELL.
" Sealed and delivered in presence of
　　　(Signed)　　　" ALBERT QUACKENBUSH."

*George C. Lay* and *Frederick W. Garvin* for appellant.

*Morgan J. O'Brien* and *Eugene Frayer* for respondents.

HAIGHT, J.　It appears that William S. Thomson, in his lifetime, was engaged in London, England, in the production

and sale of perfumes, soap and toilet articles, under the name of The Crown Perfumery Company of London and was the owner of a large number of trade marks, trade names and labels; that he maintained a place of business in Paris and another in the city of New York, in which latter city the defendants Batcheller, Russell and Miller were employed by him as his exclusive agents for the sale of his goods in the United States. On the 30th day of December, 1899, he entered into the contract in question with them, and thereupon they, with the consent of Thomson, caused the business to be incorporated in the name of The Crown Perfumery Company and then transferred the aforesaid contract to that company, by whom the business was carried on by one Welch, as manager, until the 31st day of December, 1907, when the sale of goods under the trade marks, trade names and labels of Thomson was terminated and such trade marks, trade names, etc., reverted to him.

We think the provisions of the contract admit of but one construction, and that is an agreement on the part of Thomson to sell, and of Batcheller, Miller and Russell to buy, the business and the stock on hand of the perfumery company in the United States, excepting the accounts receivable, for a stipulated price amounting to $15,961.38 to be paid in eight quarterly payments, without interest, and that Thomson agreed to grant to them the exclusive license in the United States to use and to apply to the goods manufactured or sold by them the trade marks, trade names and labels previously used by him, specifically enumerating the same, in consideration of a royalty of twenty-five per cent of the net profits of the business, which the purchasers agreed to pay him therefor; with the provision that, in case the sales amounted to less than sixty thousand dollars in any one year, Thomson might terminate the contract and receive back his trade marks, trade names and labels. Thomson further agreed to put the purchaser in direct communication with the source of his supply in Europe and in America and to invoice all articles purchased from the London house at the actual cost therefor, he to be paid ten per cent upon the invoice price. It is thus apparent that the relations existing between Thomson and the

purchasers were purely contractual, and that no copartner-
ship, trust or fiduciary relation was created thereby. ˙ Such,
it would seem, was the understanding of the parties, for semi-
annually thereafter the regular statements of the net profits
of the business were rendered by the perfumery company to
Thomson and his percentage thereof paid over to him until the
contract was terminated, the end of 1907, when the trade
marks and trade names reverted to Thomson.   While there
were one or two mistakes with reference to crediting interest
and so forth, we understand they were subsequently corrected
and that all of the business transacted under this contract
by the Crown Perfumery Company has been accounted for
and settled, and the question that now arises with reference
thereto is as to whether it has been deprived of business that
legitimately belonged to it.

Upon the trial it was found as a fact that, during the years
from 1900 to 1907, inclusive, the defendant the Crown Per-
fumery Company ordered from the Crown Perfumery Com-
pany of London various kinds of perfumery, soaps, powders
and other toilet articles, which were not covered by the spe-
cific trade marks referred to in the agreement between Thom-
son and the defendants Batcheller, Russell and Miller, and
the London house, at the request of the New York house,
delivered from time to time, to the New York house, sam-
ples and formulæ of new articles of perfumery and other
novelties, and freely gave full facilities for producing in the
American market all new articles prepared or devised by the
London company, and the defendant company, with the view
of increasing its business, used the said formulæ and pur-
chased the said new articles and accounted to Thomson for
twenty-five per cent of the profits on sales made of such new
articles purchased from the London house.   It also is found
as a fact that " In the fall of 1901 the original plaintiff,
the late William S. Thomson, with a view of increasing the
business of the defendant the Crown Perfumery Company,
urged the Crown Perfumery Company to manufacture cheap
perfumes, soaps and the bath powder known as ' Bathodora '
in this country for the purpose of saving duty upon the
importation of the articles put up in packages for the trade :

and also advised the employment of a chemist, the putting in of power and apparatus for the purpose of manufacturing perfumeries and bath powders in the United States. And in the fall of 1901 the defendant the Crown Perfumery Company, for the purpose of saving the duty on importations from England and France, adopted the suggestions of the original plaintiff, the late William S. Thomson, and undertook to manufacture perfumeries and powders in the United States, put in new power in the factory of the said defendant Crown Perfumery Company, and new apparatus for preparing and compounding perfumeries and powders, employed a chemist for that purpose, and thereafter undertook a series of experiments for the purpose of adapting the bath powder, known as 'Bathodora' to the American market."

It is further found as a fact that, "In or about the month of January, 1902, the defendants, Batcheller, Russell and Welch, formed a firm or partnership under the name or style of the 'Batcheller Importing Company,' contributing an equal amount of capital thereto, and thereafter and from January, 1902, to October, 1907, under said name manufactured and sold perfumeries, soaps and bath and other powders and appropriated the profits on the sales thereof to their own use. The defendants, Batcheller, Russell and Welch, experimented with bath powders and finally produced, in the fall of 1902, a cheap bath powder which they designated as 'Bathasweet,' and also a soap which they designated as 'Bathasweet Complexion Soap,' and a toilet powder which they designated as 'Bathasweet Rice Powder;' and beginning in February, 1903, and continuing down to October, 1907, sold large quantities of 'Bathasweet' bath powder, 'Bathasweet Complexion Soap' and 'Bathasweet Rice Powder' throughout the United States, and appropriated the profits thereof to their own use."

In October, 1907, after Thomson had given notice of his election to terminate the contract, the Batcheller Importing Company was incorporated; and upon refusal of Thomson to take over the stock on hand and business of the Crown Perfumery Company it was transferred to the Batcheller Importing Company.

It is now contended on behalf of the plaintiff that the parties to the copartnership occupied fiduciary relations to Thomson, and that as his trustees they had no right to engage in the manufacture and sale of the new bath powder, soap and rice powder, to which the term "Bathasweet" had been given as a trade mark, except in connection with the business of the Crown Perfumery Company, and that Thomson was entitled to have twenty-five per cent of the net profits therefrom; that it was for that purpose that he recommended in the fall of 1901 that the company should put in additional power and apparatus and employ a chemist for the purpose of manufacturing cheap perfumeries for the United States and thus avoid the duty on importations. The Appellate Division, however, appear to have reached the conclusion that such was not the understanding of the parties, and in reversing the judgment entered upon the decision of the trial court it reversed upon the facts as well as the law, so that the facts as above quoted from the findings now stand reversed. There was some evidence given by Thomson tending to sustain the findings to which we have alluded, as made by the trial court. It cannot, therefore, be well said that there was absolutely no evidence to sustain the findings. The Appellate Division, however, had the power to review the evidence and determine whether the findings were against the weight of evidence, and such, it appears, was the conclusion reached by it. That question this court has no power to review, for, under the Constitution, its jurisdiction is limited to the review of questions of law only. The findings, however, were based upon oral testimony. Such testimony may be changed, further witnesses may be discovered and additional facts obtained. If, therefore, the contention of the plaintiff was to the effect that the conversation found to have taken place between Thomson and the officers of the Crown Perfumery Company with reference to the manufacture of the new perfumeries known as "Bathasweet" in the United States amounted to a contract or an agreement that the manufacture and sale of such articles should be made under the provisions of the original contract, then it would have been the duty of the Appellate Division to have ordered a new trial. But such we do not

understand to be the claim of the plaintiff as set forth in his complaint. For, under the express allegations thereof, it is alleged that the business relations entered into between the plaintiff and the defendants Batcheller, Russell, Miller and Welch became and have continued to be those of quasi-partners or quasi-trustees of the plaintiff, and at all times between the 30th of December, 1899, and the present time represented themselves and the defendant Crown Perfumery Company and the so-called Batcheller Importing Company, their creatures and instruments, to be agents of the Crown Perfumery Company of London, under which latter name this plaintiff carried on his business in England. And further, that the relations between the plaintiff and the said defendants were fiduciary, under the terms of the agreement and by the course of business carried on between them. The complaint further alleges, in substance, that the said defendants other than the defendant Miller, disregarding their duties as trustees to the plaintiff and without his knowledge or consent, conspired together to divert the profits arising from the sale of " Bathasweet " powder and other articles under that name, to their own use and for that purpose the copartnership known as the Batcheller Importing Company was organized to manufacture and sell such articles, and that by reason thereof damages resulted to the plaintiff. Such being the cause of action alleged in the complaint, it follows that the right of the plaintiff to recover depends upon the question as to whether the relation between the parties was that of quasi-partners or trustees and as to whether the relation existing between the parties was of a fiduciary character. This question depends upon the construction that is to be given to the original contract. By that contract we are clearly of the opinion that the relation existing between the parties was contractual only and not that of copartners, trustees or of a fiduciary character. It follows that the Appellate Division properly refused a new trial and that its judgment dismissing the complaint should be affirmed, with costs.

CULLEN, Ch. J., GRAY, VANN, WERNER, HISCOCK and COLLIN, JJ., concur.

Judgment affirmed.